UNITED STATES v. PHILADELPHIA & R. RY. CO.

(District Court, E. D. Pennsylvania. May 13, 1915.)

No. 3434.

CARRIERS ☞37—TRANSPORTATION OF ANIMALS—STATUTES—KNOWINGLY AND WILLFULLY.

Act June 29, 1906, c. 3594, 34 Stat. 607 (Comp. St. 1913, §§ 8651–8654), prohibiting carriers in interstate commerce from confining animals in cars longer than a specified time without unloading for rest, water, and feed, and declaring that any carrier knowingly and willfully failing to comply with the act shall be liable to a penalty, imposes on a carrier the performance of a duty primarily resting on the owner to feed his own stock, and a failure to obey the act is not made punitive unless it is with knowledge and is willful, and a carrier confining animals in cars beyond the time limited, through a clerical error of the receiving clerk failing to note the loading time at initial point and to mark the shipment for unloading at a point for unloading for rest, water, and feed, is not subject to the penalty, because the carrier's act was not knowingly and willfully committed.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 95, 927; Dec. Dig. ☞37.]

Action for penalty by the United States against the Philadelphia & Reading Railway Company. Judgment for defendant.

Robert J. Sterrett, Asst. U. S. Atty., and Francis Fisher Kane, U. S. Atty., both of Philadelphia, Pa., for the United States.

Wm. Clarke Mason, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. This is an action for the penalty imposed under the act of Congress of June 29, 1906. Trial by jury was waived by agreement, and the case tried before the court.

The facts are these: A car load of 168 hogs was shipped from Cincinnati, Ohio, consigned to J. J. Felin, at Nicetown, Philadelphia. The hogs were unloaded, watered, and fed at Pittsburg. They were then loaded on car P. L. 658237, April 22, 1914, at 6 o'clock a. m. The time limit had been extended and expired at 6 p. m. April 23d. The hogs were, however, kept confined in the car until 7:40 p. m. The time limit was thus exceeded by 1 hour and 40 minutes. The defendant

took charge of the transportation of the car at Rutherford, Pa. The next point for unloading was Reading. It was the duty of the receiving clerk at Rutherford to have noted the loading time as 6 a. m. April 22d, and to have marked the shipment for unloading, etc., at Reading. Through a clerical error this was not done. In consequence, the car was not unloaded at Reading, but went on through to Philadelphia. There was no other excuse for or explanation of the failure to unload.

The question in the case is whether under this state of facts the defendant has "knowingly and willfully" failed to comply with the requirements of the law. We do not regard the question as open to but one answer. It is disposed of for us by the case of U. S. v. Lehigh Valley, 204 Fed. 705, 123 C. C. A. 9. We do not view the doctrine laid down in that case to be fraught with the danger to the enforcement of the law which the argument for the United States assumes to be present in it. It must be borne in mind that the act of Congress requires the railroad to perform a duty which primarily is imposed on the owner to feed his own stock. Properly, therefore, failure to obey is not made punitive unless the failure is with knowledge and willful. In a word, it must reach the grade of disobedience. Carriers are, of course, bound to know the law. Knowing it, they know the time of confinement on the connecting line must be computed. Means of knowledge within reach must be resorted to. A refusal to avail themselves of such means would be evidence of that attitude of mind which is conveyed by the word willful. Mere negligence is clearly, however, at least not necessarily inclusive of willfulness. There is in common speech the phrase "willful negligence." Whether willfulness or mere negligence is a question of fact.

The argument for the United States overlooks the feature of this case that there is in it the concession of the fact that the "failure" was due to the "error"—the "clerical mistake"—of making the wrong entry on the card. The only modification of this conceded fact is that the error might have been discovered by other employés of the defendant than the clerk who made the entry, if they had assumed to supervise his work. This added fact only gives us added proof of negligence, and if it was the duty of the other employés to correct the errors of the clerk, it would only add to the number to be convicted of negligence. It does not weaken or take away from us the legal consequences of the concession that the failure of the defendant to comply with the law was due to a clerical mistake. If so, the act of omission was not "knowingly and willfully" committed.

Judgment is entered in favor of the defendant.